UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOHO CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET INTEGRATION, INC., et al.,<br><br>Defendants. | Case No. 23-cv-00054-SI<br><br>**ORDER AUTHORIZING ALTERNATIVE SERVICE BY EMAIL UNDER RULE 4(F)(3) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Re: Dkt. No. 21 |

**BACKGROUND**

Plaintiffs Zoho Corporation and Zoho Corporation Pvt. Ltc. ("ZCPL") (collectively "Plaintiffs" or "Zoho") brought an action against Target Integration Inc. ("TII") and Target Integration Consultancy Pvt. Ltd. ("TICPL") (collectively, "Defendants" or "Target Integration") for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426. Compl. Dkt. No. 1 at 11, 12. Before the Court is plaintiffs' motion for an order declaring service of process on TICPL effective or, in the alternative, authorizing alternative service on TICPL via email. Dkt. No. 21. Plaintiffs allege that TII is a corporation incorporated in Delaware and doing business in California, while TICPL is organized and exists under the laws of India. Dkt. No. 1 ¶ 1. Plaintiffs allege, however, that TII and TICPL act as "a single enterprise globally" and have overlapping executives, including the same CEO, Rohit Thakral. Dkt. No. 21 at 3–4.

Zoho is a web-based business software and information technology tool provider. Dkt No. 1 ¶ 1. As a result of its engagement with businesses over the past two decades, Zoho collected

"critical business and market information in its internal CRM [customer relationship management database]." *Id.* ¶ 12. Plaintiffs allege that in September of 2022 they were notified by a business partner that one of the business partner's customers had received a marketing solicitation email from Target Integration on September 21, 2022. *Id.* ¶¶ 11, 15. The business partner expressed concern because "the recipient's email address . . . was a unique address that . . . could have been obtained only from that [business partner] or Zoho's internal CRM." *Id.* ¶ 15. Zoho contacted Aman Thrakal, Target Integration's Business Head residing in Mountain View, CA, and Rabindranath Mukherjee, believed to be a Target Integration Sales Head, and asked how Target Integration obtained the customer's email. *Id.* at 17. On November 6, 2022, Zoho received another email from a different business partner alerting Zoho that the business partner had received an email from Target Integration. *Id.* On the same day, Zoho itself received a solicitation email from Target Integration. *Id.* ¶¶ 19, 20. Zoho subsequently filed suit, alleging that Target Information illegally accessed, obtained and used Zoho's confidential and proprietary trade secret information from Zoho's CRM. *Id.*

After filing suit, Zoho emailed Target Integration's Indian counsel and asked if counsel would waive service of process. Marton Decl. Dkt. No. 21-1 ¶ 14. Target Integration's Indian counsel informed Zoho that it only represented TII and TICPL within India, and that TII and TICPL were unrepresented in the United States. *Id.* ¶ 14. Zoho then formally served TII, a corporation incorporated in Delaware and doing business in California, through its registered agent in Delaware. *Id.* Zoho unsuccessfully attempted service on TICPL through TII's registered agent. *Id.* ¶ 7, Ex. F.

On January 25, 2023, Rohit Thakral, CEO of both TII and TICPL, contacted Zoho's counsel by email and copied the Court, requesting an extension on behalf of "Target Integration" to respond to Zoho's complaint and informing Zoho and the Court that "Target Integration" had not yet obtained legal counsel. *Id.* ¶ 16. Zoho's counsel emailed Mr. Thakral, notifying him that Zoho planned to file this Ex Parte Motion Requesting Authorization for Alternative Service. Dkt. No. 21 at 1 n. 1. Plaintiffs' Ex Parte Motion Requesting Authorization for Alternative Service requests that the Court (1) find that Zoho's service on TICPL was effective when Zoho served TII's registered agent pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure, or in the alternative, (2)

2

authorize alternative service by email on TICPL pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure. Dkt. No. 21.

## LEGAL STANDARD

"Ex parte motions may be brought in emergencies, to preserve state secrets and in a variety of other contexts." *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014). "A federal court has jurisdiction over a defendant only if the defendant has been properly served." *Cadence Design Sys., Inc. v. Syntronic AB*, No. 21-cv-03610-SI, 2021 WL 4222040, at *3 (N. D. Cal. Sept. 16, 2021). Fed. R. Civ. P. 4(f) provides that an individual not within any judicial district of the United States may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . .
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: . . . or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

"The Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and opportunity to respond." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002).

## DISCUSSION

### I. Appropriateness of Ex Parte Motion

"Ex parte motions may be brought in emergencies, to preserve state secrets and in a variety of other contexts." *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014). Plaintiffs notified defendants via email before filing this motion and have been in contact with defendants' CEO via email. Dkt. No. 21 at 1 n. 1. Defendants have actual notice of the motion. The Court finds that it is appropriate for plaintiffs to move ex parte in these circumstances because requiring plaintiffs to serve defendants before requesting authorization for alternative service would

3

be paradoxical.

**II.    Alternative Service Under Rule 4(f)(3) of the Federal Rules of Civil Procedure**

Plaintiffs request that the Court find that plaintiff properly served TICPL through TII's registered agent in Delaware. Dkt. No. 21 at 6. The Court denies this request. In the alternative, plaintiffs request authorization for alternative service by email under Federal Rule of Civil Procedure 4(f)(3). Dkt. No. 21 at 7. The Court grants this request and authorizes service by email pursuant to Federal Rule of Civil Procedure 4(f)(3).

To determine whether the Court should allow alternative service by email, the Court must determine that (1) service by email is not barred by an international agreement and (2) the benefits of alternative service by email outweigh the limitations in this particular case. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).

Plaintiffs argue the Court should authorize alternative service by email pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure. Dkt. No. 21 at 7. First, plaintiffs argue that alternative service through email to Indian defendants is not prohibited by international agreement. Dkt. No. 21 at 7–8. Second, they argue that "alternative service by email comports with due process" because Zoho has "completed service of all initiating documents on TII and delivered the same by email to their overlapping Target Integration executives and shared Indian counsel." Dkt 21. at 8. Finally, they contend that TICPL "has actual notice of Zoho's claims and this lawsuit." *Id.* Further, plaintiffs request authorization for alternative service to prevent service through the Hague Convention, "which would only unnecessarily delay these proceedings . . . [because service through the] Hague [Convention] is expected to take at a minimum six months." Dkt. No. 21 at 8.

### A.    International Agreement

The Ninth Circuit has stated that Rule 4(f) provides three independent and permissible grounds for serving foreign defendants. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). "Rule 4(f)(3) is merely one means among several which enables service of process on an international defendant." *Id.* Rule 4(f) should not be read to create a hierarchy where Rule

4

1  4(f)(3), which allows service "by other means not prohibited by international agreement, as the court orders," is seen as either as last resort or extraordinary relief. *Id.*

"Federal Rule of Civil Procedure 4(h)(2) authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f) for individuals" where service is "(1) directed by the court; and (2) not prohibited by international agreement." *Rio Props., Inc.*, 284 F.3d at 1015. "[A]s long as court-directed and not prohibited by international agreement, service of process offered under Rule (4)(f)(3) may be accomplished in contravention of the laws of the foreign country." *Id.* at 1014.

Although India is a signatory to the Hague Convention,[1] India has "formally objected to service under Article 10, and does not permit service via postal channels." U.S. Dep't of State–Bureau of Consular Affs., *Judicial Assistance Country Information: India*, Travel.State.Gov (Nov. 15, 2013) https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/India.html (last visited Mar. 24, 2023). "However, numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies. This is true even in cases involving countries that, like India, have objected to the alternative forms of service permitted under Article 10 of the Hague Convention." *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158 at *12 (N.D. Cal. July 1, 2011).

This Court granted a motion authorizing alternative service to U.S.-based counsel in *Cadence Design Systems, Inc., v. Syntronic AB, et al.*, despite China's objections under Article 10 of the Hague Convention. *See Cadence Design Sys., Inc. v. Syntronic AB*, No. 21-cv-03610-SI, 2021 WL 4222040, at *3 (N. D. Cal. Sept. 16, 2021). In that case, defendant Syntronic Beijing stated that it did not have an office in the United States. *Id.* It claimed to have separate financials from Syntronic U.S., but the Syntronic website referred to the corporations as unified, listing a

---

[1] The Hague Convention is a multi-state treaty formed "to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time, [and] desiring to improve the organisation of mutual judicial assistance for that purpose by simplifying and expediting the procedure . . . ." Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, HCCH.

1  "Group CEO." *Id.* Prior to filing the action, the plaintiff communicated with all Syntronic entities.
2  *Id.* The plaintiff filed a proof of service of their summons and complaint on Syntronic Beijing at
3  Syntronic U.S.'s principal place of business. *Id.* The defendants argued that the plaintiff needed to
4  "attempt service through the Hague Convention." *Id.* at *5. However, this Court found that "there
5  is no hierarchy of preferred methods of service of process," and that "service of process under Rule
6  4(f)(3) is one means among several which enables service of process on an international defendant."
7  *Id.* at *4–5 (cleaned up) (quoting *Rio Props., Inc.*, 284 F.3d at 1014–15).

8   Although the plaintiffs here have not attempted service on TICLP through the Hague
9  Convention, they are not required to do so. *Rio Props., Inc.*, 284 F.3d at 1014–15. Zoho attempted
10 to serve TICLP through TII's registered agent but was unsuccessful. Marton Decl. Dkt. No. 21-1 ¶
11 7, Ex. F. TICPL does not have counsel in the United States, and therefore there has not been a
12 waiver of service by counsel. *Id.* ¶ 15. Although India has objected to alternative service under
13 Article 10 of the Hague Convention, the Court finds that alternative service by email is permitted
14 by Rule 4(f)(3) and is not barred by international agreement.

16  **B.    Reasonableness of Alternative Service**
17  Service of process must be "reasonably calculated . . . to apprise interested parties of the
18 pendency of the action and afford them an opportunity to present their objections." *Rio Props., Inc.*
19 *v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (quoting *Mullane v. Cent. Hanover Bank*
20 *& Trust Co.*, 339 U.S. 306, 314 (1950)).

21  In *Rio Properties*, the plaintiff attempted to serve the defendant at an address in Miami,
22 Florida, which was used to register the allegedly infringing domain names. *Rio Props., Inc., 284*
23 *F.3d* at 1013. The plaintiff discovered that the address "housed [defendant's] international courier,
24 IEC, which was not authorized to accept service on [defendant's] behalf." *Id.* However, IEC agreed
25 to forward the summons and complaint to defendant's Costa Rican courier. *Id.* The plaintiff
26 received a call from a Los Angeles attorney with whom defendant consulted after receiving the
27 summons and complaint; the attorney refused to accept service on defendant's behalf but asked for
28 a copy of the summons and complaint since the defendant provided him with an illegible copy. *Id.*

The plaintiff could not find the defendant's address in Costa Rica but learned that the defendant's preferred communication was email. *Id.* The plaintiff then filed an emergency motion for alternate service of process. *Id.*

The Ninth Circuit explained, "we commit to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require service of process under Rule 4(f)(3)." *Id.* at 1016. "[T]rial courts have authorized a wide variety of alternative methods of service . . . most recently email." *Id.* The Ninth Circuit found that the plaintiffs "attempted to serve [defendant] by conventional means in the United States" but that the defendant's courier and consulted attorney refused service. *Id.* The Ninth Circuit found based on the facts that service of process by email was reasonably calculated to apprise the defendant of the pendency of the action and afford it an opportunity to respond. *Id.* at 1017. The Ninth Circuit reasoned that the defendant "structured its business such that it could be contacted *only* via its email address." *Id.* at 1018. Since the Ninth Circuit decided *Rio Properties* in 2002, there has been a dramatic increase in email usage as a form of professional communication.

This Court is tasked with balancing the limitations of alternative service against the benefits to determine whether alternative service is reasonable based on the circumstances. *Id.* at 1016. Zoho's attempts of service on TICPL are similar to the attempts made by the plaintiff in *Rio Properties*. Zoho attempted to serve TICPL through TII's registered address in Delaware but were unsuccessful. Dkt. No. 21-1 ¶ 15 Ex. F. Zoho contacted Target Integration's counsel located in India and asked them to waive service, they would not do so. Dkt. No. 21-1 ¶ 15. Neither TII nor TICPL have U.S. counsel who will accept service. Dkt. No. 21-1 at ¶¶ 5, 15. Further, TICPL does not have a principal place of business in the United States. *Id.* And TICPL's CEO has received and responded to plaintiffs' communications about the proceeding. *Id.* ¶¶ 15–16. Therefore, the Court finds TICPL structured its business in a manner that it could best be contacted through email.

While the Ninth Circuit identified that alternative service by email has certain limitations because there is "no way to confirm receipt of an email" and there is "limited use of electronic signatures," *Rio Props., Inc.*, 284 F.3d at 1018, here Target Integration's CEO is already aware of the action and has informed plaintiffs that Target Integration is attempting to obtain counsel to

7

respond to it. Marton Decl. Dkt. No. 21-1 ¶ 16. Further, the Court finds that alternative service by email comports with due process because it will give TICPL actual notice and an opportunity to respond. Therefore, the Court finds that the benefits of alternative service by email outweigh the limitations, service by email comports with due process, and service by email is reasonable.

## CONCLUSION

Plaintiffs' motion to authorize alternative service through email is **GRANTED**.

**IT IS SO ORDERED**.

Dated: April 7, 2023

SUSAN ILLSTON
United States District Judge